NATIONAL LABOR RELATIONS BOARD
v. RED ARROW FREIGHT LINES,
Inc., et al.
No. 12672.

United States Court of Appeals
Fifth Circuit.
Jan. 31, 1952.

A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Associate Gen. Counsel, Louis Libbin, Julius G. Serot, Winthrop A. Johns, Attys., National Labor Relations Board, Washington, D. C., for petitioner.

Sam R. Sayers, Fort Worth, Tex., Jack Binion, Houston, Tex., for respondents.

Before HUTCHESON, Chief Judge, and HOLMES and STRUM, Circuit Judges.

HUTCHESON, Chief Judge.

Supporting its motion by affidavits, the National Labor Relations Board calls to our attention the fact: that since the entry of our decree in this cause,[1] certain of the employees of respondents have formed and incorporated an association known as Union of Transportation Employees, or U. T. E., and that respondents have recognized, and are bargaining with it, as the representatives of their employees. It insists that for so doing, respondents should be held in contempt of our decree.

Respondents, appearing by answer to the rule, supported by affidavits, deny that they are in contempt and allege that, in full compliance with our decree, they have obeyed, and are obeying, both its cease and desist, and its affirmative, provisions.

Admitting that they have recognized, and are recognizing, U. T. E. as the representative of their employees for bargaining, they allege that they did, and do, so, because upon a careful check they found that its claims to represent a majority of its members were completely well founded.

Setting out in its answer and by affidavits the facts regarding the formation of U. T. E., they allege that all of their acts were in good faith and with the purpose and intent of complying with the decree. They deny that they had or have any part or interest in the formation of U. T. E. or its selection by the employees as bargaining agent.

In addition to their answers, respondents filed: (1) a motion to quash and dismiss[2] the petition of the Board; (2) a motion for trial by jury; and (3) in the alternative a motion for the appointment of a master in chancery.

These matters coming on to be heard, the court directed petitioner and respondents to file briefs on the questions raised, and, the briefs in, the motions of petitioner and respondents are before us for decision.

Upon a full consideration of the authorities and arguments, we find ourselves in agreement with the Board that this is not a contempt proceeding within the meaning of the statute invoked by respondents, so as to require a jury trial, and that there can be no question as to our jurisdiction to proceed with the inquiry, whether in recognizing U. T. E., respondents are in contempt of our decree.

We find ourselves in disagreement, however, with the Board's contention that the matter for inquiry is whether U. T. E. is a successor to the association in the sense that the employees who have selected it are the same employees who selected the association. We think this is not at all the issue, but that it is whether the employees have selected U. T. E. as their representative without interference, coercion, or persuasion by the respondents.

1. N. L. R. B. v. Red Arrow Freight Lines, 5 Cir., 180 F.2d 585.

2. On these grounds: (1) that the court is without jurisdiction to determine the controversy in that the question of whether U. T. E. is an independent organization or is the same organization which this court ordered it to cease bargaining with, is a question requiring full administrative and judicial determination in a separate proceeding in which respondents may exercise their rights for the impaneling of witnesses and the taking of testimony; (2) the court cannot hear the matter because this is a proceeding in contempt and respondents are entitled to a trial by jury; (3) the N. L. R. B. has original and exclusive jurisdiction to determine the question raised as to whether U. T. E. is dominated by respondents.

This court has taken the unwavering position, under the act, both in its original form and as amended, that what the statute was enacted to accomplish was to protect not the rights of unions to obtain representation contracts but the rights of employees to be represented by a bargaining agent of their own choosing, and that, under all circumstances, these rights must be protected and preserved.[3]

It has, therefore, been the settled rule of this court, never departed from, that an association, formed, or whose business has been conducted under, the domination or influence of the employer, or which the employer has induced the employees to take as representative, may not, under the statute, act as representative of them. It is equally well settled, though, that employees may not be prevented by the order of the board or of this court from fairly and without interference, inducement, or coercion, choosing their own representative. The provision in our decree, therefore, prohibiting the organization of a successor to the association cannot be construed to mean that, merely because U. T. E. was promptly formed and the great majority of those who had formerly chosen the association had also chosen U. T. E., it would be contempt of court for the employer to recognize the association as representative of its employees.[4]

Instead, therefore, of undertaking to determine this crucial question for ourselves, on the affidavits or by having a master to take evidence and make findings, we have concluded that our order should be one appointing as examiner a person qualified to take testimony, with authority, to arrange for hearings, summon witnesses, keep the hearings within bounds, and, without making findings thereon, return the testimony into this court when the investigation is concluded.

In making such inquiry, the examiner should not permit the inquiry to be unduly prolonged, or repetitiously conducted, but should take the testimony with the design and purpose of keeping the inquiry within reasonable bounds by confining it to the controlling issue in the case, whether U. T. E. really represents the uncontrolled and uninfluenced choice of the employees of respondents, or whether, as was found to be the case with the association, it was, or is, dominated, controlled or influenced by the respondents; or its members and affiliations were induced in whole or in part by the responsible officers or agents of respondents.

While the taxing of costs of taking the testimony will, in all reasonable probability, be ultimately cast upon the losing party in this proceeding, pending the final taxing thereof, petitioner and respondents will, when and as the examiner finds it necessary to make requests for payments on account, advance such payments in equal portions. An order drawn in accordance herewith may be presented for entry.

---

3. N. L. R. B. v. Brown, 5 Cir., 108 F.2d 867, 871. In this case, while enforcing the Board's order requiring the disestablishment of Brown Paper Mill Employees Association, we stated:
"This does not mean of course, nor does the order in anywise declare, that the employees may not immediately, provided it is with complete independence and freedom from the domination, interference or support of the management, form their own union. It certainly does not mean that they must join the organization of complainant. * * *

"* * * The law is not concerned with what organization employees may form or join. It is concerned only with seeing that that joining is free from company interference, influence or support."

4. Magnolia Petroleum Co. v. N. L. R. B., 5 Cir., 112 F.2d 545. At page 552 of 112 F.2d we quoted from N. L. R. B. v. Brown, 5 Cir., 108 F.2d 867: "The act does not compel employees to affiliate themselves * * * nor does it prevent them from forming truly independent local associations of their own."