Bennet F. SCHAUFFLER, Regional Director of the Fourth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

LOCAL 1291, INTERNATIONAL LONG-SHOREMEN'S ASSOCIATION, Respondent.

Civil No. 28373.

United States District Court
E. D. Pennsylvania.

Nov. 30, 1960.

738

Clifford M. Roth, N. L. R. B., Washington, D. C., for petitioner.

Abraham E. Freedman, Freedman, Landy & Lorry, Philadelphia, Pa., for respondent.

EGAN, District Judge.

This cause came on to be heard upon the verified petition of Bennet F. Shauffler, Regional Director of the Fourth Region of the National Labor Relations Board (herein called the Board), praying for an adjudication in civil contempt and for other civil relief, and upon the issuance of an order to show cause why respondent should not be adjudged in civil contempt of this Court as prayed in said petition. A hearing on the issues raised by said petition and answer hereto was duly held beginning on November 17, 1960. All parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issues, and to argue on the evidence and the law.

In its answer and accompanying document entitled "Objections and Exceptions to Order to Show Cause for Adjudication in Civil Contempt and Motion to Vacate" respondent objected to this proceeding on the grounds that the petition failed to state a cause of action; that this Court had no authority to enter the Order to Show Cause issued on October 31, 1960; that this Court erred in requiring respondent to answer by verified answer; that this Court erred in requiring said answer to be filed in less than twenty days; that this Court erred in setting a hearing on the petition in less than ten days; that the Order to Show Cause is in conflict with the Federal Rules of Civil Procedure, 28 U.S.C.A. and that respondent was entitled to a jury trial under Title 18 U.S.C.A. § 3692. This Court after due deliberation having found and ruled that there is no merit in law or fact for said objections; and the Court having fully considered the petition, answer, evidence, arguments, and briefs of counsel, upon the entire record, makes the following:

Findings of Fact

1. On August 18, 1960, this Court entered its Order Granting Injunction herein directing, in pertinent part, as follows:

"Ordered, Adjudged and Decreed that, until the final disposition of the matters involved pending before the National Labor Relations Board, respondent Local 1291, International Longshoremen's Association, its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with it, be, and they hereby are, enjoined and restrained from:

"In any manner or by any means, including picketing, orders, directions, instructions, requests, or appeals, however given, made or imparted, or by any like or related acts or conduct, or by permitting any such to remain in existence or effect, engaging in, or inducing or encouraging any individual employed by Northern Metal Company, or by any other person engaged in commerce, to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any service, or in any manner or by any means, threatening, coercing, or restraining Northern Metal Company, or any other person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is to force or require Northern Metal Company to assign

the work of moving motor vehicles to be loaded upon or unloaded from ships, to and from the point where such vehicles are taken over by, or released from 'the hook', to employees who are members of, or represented by, Local 1291, International Longshoremen's Association, rather than to employees who are members of, or represented by, Local 14, Industrial Union of Marine and Shipbuilding Workers of America, AFL-CIO, or who are not members of or represented by Local 1291, International Longshoremen's Association."

2. The said order has been in full force and effect since its entry, and, at all times material herein, respondent has had notice and actual knowledge of its terms.

3. At times material herein, Northern Metal Company (herein called Northern), pursuant to a contract with the United States Army, was engaged in the loading aboard and unloading from ocean going vessels of motor vehicles shipped in foreign commerce.

4. At all times material herein, Northern assigned to employees who are members of, or represented by Local 14, Industrial Union of Marine and Shipbuilding Workers of America, AFL-CIO, (herein called Local 14), or who are not members of or represented by Respondent, the work of moving motor vehicles to be loaded upon or unloaded from ships, to and from the point where such vehicles are taken over by, or released from "the hook".

5. Since entry of said injunction order, Respondent has failed effectively to revoke its prior orders, directions, instructions, requests and appeals which this Court found Respondent had issued, directed and made to employees who were members of, or represented by it, not to perform services for Northern unless the latter assigned the work of moving motor vehicles being loaded aboard or unloaded from ships to and from the point where such vehicles are taken over by or released from "the hook" to employees who are members of or represented by Respondent, but, on the contrary, Respondent has permitted its aforesaid prior orders, directions, instructions, requests and appeals to remain in existence and effect.

6. As a result of Respondent's aforesaid conduct, said employees of Northern have continued, since entry of said injunction order, to refuse to perform services for Northern in connection with such loading or unloading of motor vehicles. Said employees continue to refuse to perform services for Northern in connection with said loading or unloading unless Northern employs employees who are members of or represented by Respondent in gangs of twenty-two rather than fifteen (15) men.

7. By its aforesaid conduct set forth in Findings of Fact 5 and 6, above, Respondent has, since entry of this Court's injunction order of August 18, 1960, continued to engage in, and to induce and encourage employees who are members of or represented by Respondent to engage in strikes or refusal to use, manufacture, process, transport, or otherwise handle or work on goods, articles, materials or commodities, or to perform services for Northern, and has continued to threaten, coerce and restrain Northern.

8. By its conduct, described above, in Findings of Fact 5, 6 and 7, Respondent, since entry herein of the injunction order of August 18, 1960, has been violating, resisting, disobeying and failed and refused to comply with, and continues to violate, resist, disobey and fail and refuse to comply with, said injunction order of this Court.

9. Respondent is engaging in the conduct set forth in Findings of Fact 5, 6, 7 and 8, above, with an object of forcing or requiring Northern to assign the work of moving of motor vehicles to and from the point where they are taken over by or released from "the hook" to employees who are members of, or represented by, Respondent rather than to employees who are members of, or represented by Local 14, or who are not members of or represented by Respondent.

10. By its conduct as hereinabove set forth in Findings of Fact 5, 6, 7, 8 and 9, above, Respondent has been and is, in civil contempt of this Court.

## Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding.

2. (a) Northern is engaged in commerce or in an industry affecting commerce.

■ (b) Respondent is in civil contempt of this Court for violating, disobeying and failing and refusing to comply with the Order Granting Injunction issued by this Court on August 18, 1960, and a continuation of such contemptuous conduct will impair the policies of the National Labor Relations Act as set forth in Section 1 thereof, 29 U.S.C.A. § 151 and will be detrimental to the public interest.

3. The public interest requires that, to purge itself of contempt, Respondent be required to bring about full and complete compliance with the Court's order; to assure against continued or repeated disobedience thereof; to take such action as may be necessary to eradicate the effects of the contemptuous conduct; and to make petitioner whole for all expenses incurred in the investigation, institution and prosecution of the civil contempt proceeding.

## Discussion

This case originally came before the Court on a petition of the Regional Director of the National Labor Relations Board for injunctive relief under Section 10(l) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 160(l), pending the final adjudication by the Board with respect to a charge by the Northern Metal Company that the respondent was engaged in unfair labor practices in violation of Section 8(b) (4) (D) of the Act, 29 U.S.C.A. § 158(b) (4) (D). The respondent filed an answer. A hearing was held at which both sides had full opportunity to be heard and to present evidence and argument to the Court. Upon consideration of the petition, answer, evidence, arguments, and briefs of counsel, we found that the petitioner had reasonable cause to believe that the respondent had engaged in unfair labor practices within the meaning of Section 8(b) (4) (D) of the Act, and that a continuation of those practices would impair the policies of the Act. Accordingly, on August 18, 1960, in order to preserve the issues for orderly determination by the Board, which by statute has exclusive jurisdiction to determine such matters, the Court granted a temporary injunction prohibiting the respondent from various types of activity intended to force Northern Metal Company to assign the handling of motor vehicles on the shore side of the hook to employees represented by respondent.

At the bottom of this controversy is the question whether the cargo involved should be handled by gangs of 15 or 22 men. This is the controversy of which the National Labor Relations Board has taken cognizance and as to which it has asked this Court to preserve the status quo ante pending hearing and decision.

There is no doubt that the union contract subsisting between Northern Metal Company and the defendant at the time this controversy arose and for several years prior thereto contained the following broad language:

"Minimum number of men in gang when discharging or loading general cargo to or from the pier shall be twenty-two (22) men, including drivers of mechanical equipment, not less than eight (8) hold men discharging and eight (8) hold men loading." Petitioner's Exhibit 3, p. 14.

Despite this all-inclusive language, the parties themselves had interpreted it to mean that this applied only to general cargo and not to cargo supplied by the United States. The former required a gang of 22, and the latter a gang of 15. Respondent takes the position that the private automobiles of the military personnel, even though shipped by the Government at its expense, are general cargo

and require a gang of 22. Petitioner contends otherwise.

Petitioner now moves the Court to hold respondent in civil contempt for failure to obey our order of August 18, 1960.

At the hearing on November 17, 1960, the only evidence presented by the petitioner was the testimony of Charles McGinley, superintendent stevedore employed by the Northern Metal Company (himself a member of respondent union), whose job it is to hire gangs of stevedores as needed by Northern. His testimony indicated that since the time of the issuance of the temporary injunction he has been unable to hire 15-man gangs of stevedores for loading and unloading Government-shipped motor vehicles owned by military personnel and has had to hire 22-man gangs for this work. Respondent presented no evidence in defense of the charge and demurred to that offered by petitioner.

We feel that the situation described by Mr. McGinley is precisely that against which our injunction was directed. It is apparent that the respondent is persisting in its attempts to force Northern Metal Company to assign to its members the handling of such motor vehicles on the shore side of the hook by refusing to work this type of cargo except in 22-man gangs. There is no reasonable inference but that respondent is deliberately ignoring our order of August 18, 1960.

We find no merit in respondent's contention that this proceeding is invalid for failure to comply with various provisions of the Federal Rules of Civil Procedure.

There is nothing in the case of Philippe v. Window Glass Cutters League of America, D.C.W.D.Ark.1951, 99 F.Supp. 369, on which respondent so heavily relies, at odds with the conclusion reached by us. There the Court said (at page 374):

"The procedure to be followed in the case of civil contempt is not so clearly defined. It appears that there should be a pleading directed to the court which sets forth the acts or conduct which allegedly constitute the contempt; there should be reasonable notice to the one charged with the contempt, of the acts or conduct alleged to constitute the contempt; and the one so charged should be given an opportunity to state his defense and be heard. In other words, the basic requirements of due process, notice and hearing, should be followed. The original pleading or 'accusation' should conform to the standards set by Rule 8, Federal Rules of Civil Procedure, 28 U.S.C.A., for the statement of a claim, wherein it is provided that a pleading 'shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, *unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled.'*" (Emphasis supplied).

Section 10(*l*) of the Act provides a method of procedure which is inconsistent with and takes precedence over the provisions of the Federal Rules which respondent wishes to apply. To follow those provisions, with all their attendant delays, would frustrate the Congressional intent to provide for speedy injunctive relief pending determination of the controversy by the National Labor Relations Board. It is enough in this case that the respondent has had sufficient notice and an opportunity to be heard and present evidence and argument. We note that the procedure here is quite similar to that before our brother Judge Grim in the civil and criminal contempt proceeding in the case of Schauffler v. United Association, Civil Action 16722, April 20, 1955, affirmed 3 Cir., 1956, 230 F.2d 572.

Likewise, we find no merit in the respondent's contention that it is entitled to a jury trial on the charge of

civil contempt. Section 3692, 18 U.S.C. provides for a jury trial in "all cases of contempt arising under the laws of the United States governing the issuance of injunctions or restraining orders in any case involving or growing out of a labor dispute \* \* \*"

We believe that Section 10(*l*) of the National Labor Relations Act is not a law governing the issuance of injunctions in cases involving labor disputes. Rather, it is a law governing the issuance of injunctions in cases involving unfair labor practices. See N. L. R. B. v. Red Arrow Freight Lines, 5 Cir., 1952, 193 F.2d 979.

Order Adjudging Respondent in Civil Contempt of Court and Prescribing Terms of Purgation

This cause having come on to be heard upon the verified petition of Bennet F. Shauffler, Regional Director of the Fourth Region of the National Labor Relations Board, on behalf of said Board, for a judgment in civil contempt of court against Local 1291, International Longshoremen's Association, respondent herein, and upon an order to show cause issued herein on October 31, 1960, directing respondent to show cause why it should not be adjudged in contempt of court as prayed in said petition; and the Court, having considered the pleadings, evidence, briefs, and arguments of counsel, and the entire record in this cause, and having made and filed its Findings of Fact and Conclusions of Law, and having had due deliberation thereon,

Now, therefore, upon the entire record, it is

Ordered, Adjudged and Decreed, that respondent, Local 1291, International Longshoremen's Association, be, and it hereby is adjudged in civil contempt of this Court for violating, resisting, disobeying and failing and refusing to comply with the order of this Court entered herein on August 18, 1960; and it is

Further Ordered, Adjudged and Decreed that respondent Local 1291, International Longshoremen's Association shall purge itself of its said contempt by taking the following action, all of which action said respondent is hereby ordered to take:

1. Forthwith fully complying with all the provisions of the order of this Court entered herein on August 18, 1960.

2. Forthwith ceasing and desisting from, in any manner or by any means, including picketing, orders, directions, instructions, requests, or appeals, however given, made or imparted, or by any like or related acts or conduct, or by permitting any such to remain in existence or effect, engaging in, or inducing or encouraging any individual employed by Northern Metal Company (herein called Northern), or by any other person engaged in commerce, to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any service, or in any manner or by any means, threatening, coercing, or restraining Northern Metal Company, or any other person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is to force or require Northern Metal Company to assign the work of moving motor vehicles to be loaded upon or unloaded from ships, to and from the point where such vehicles are taken over by, or released from "the hook", to employees who are members of, or represented by, Local 1291, International Longshoremen's Association, rather than to employees who are members of, or represented by, Local 14, Industrial Union of Marine and Shipbuilding Workers of America, AFL-CIO, or who are not members of or represented by Local 1291, International Longshoremen's Association.

3. Forthwith discontinuing all the acts and conduct set forth in Findings of Fact 5, 6, 7, 8, and 9 as well as any and all like or related acts and conduct.

4. Forthwith notifying and instructing its members and all employees represented by it that, pending the final disposition of the matters involved pending before the National Labor Relations

Board, they shall not refuse to perform services for Northern in connection with the loading or unloading of motor vehicles because employed in gangs of fifteen men rather than in gangs of twenty-two men, or to take any other action or engage in any other conduct to compel Northern to employ respondent's members, or stevedoring employees represented by it, in gangs of twenty-two men rather than in gangs of fifteen men for such operations.

5. Taking all steps necessary or required to insure that such notice and instructions are complied with by respondent's members and all persons represented by it.

6. Filing with the Clerk of this Court and with petitioner, within five (5) days after the entry of the order of adjudication in contempt, a sworn statement showing the steps taken by it to comply with the Court's said order of adjudication.

7. Paying to the Board, as costs, reasonable counsel fees and all costs and expenditures incurred by the Board in the investigation, preparation, presentation and final disposition of this proceeding to adjudge respondent in civil contempt.

8. Appearing before this Court by an authorized representative on Monday, December 12, 1960, at 2 p. m. and at such further times as the Court may direct, and show this Court that respondent has fully complied with this order.

It is Further Ordered, Adjudged and Decreed, that, upon a failure to so purge itself, attachment for civil contempt shall issue against respondent.

It is Further Ordered, Adjudged and Decreed, that, in the event respondent Local 1291, International Longshoremen's Association fails or refuses to comply with the purgation provisions of this order or continues to fail or refuse to comply with this Court's order of August 18, 1960, a compliance fine of $1000, is hereby imposed upon Local 1291, International Longshoremen's Association, for said contempt, said sum to be paid to petitioner on behalf of the United States of America, and an additional sum of $100 shall likewise be paid by said respondent for each day, or part thereof, during which it shall fail to comply with the provisions of this order and of the order of August 18, 1960, and petitioner shall have execution therefor; provided, however, that at any time after sixty (60) days from the date of this order respondent may apply to this Court on ten (10) days notice to petitioner, to be relieved of this provision, upon a satisfactory showing that it has fully complied with this order and the order of August 18, 1960, and that it intends in good faith to continue such compliance.